Lanzinger, J.,
dissenting.
{¶ 23} This case presents a concrete example of how statutory immunity functions in Ohio. Appellants, Gary and Yvonne Bibler, ask us to read R.C. Chapter 4511, which establishes traffic laws related to the operation of motor vehicles, and R.C. Chapter 2744, which sets forth the tort liability of political subdivisions, as an interrelated body óf law. The lead opinion adopts this position. But the scope of a political subdivision’s statutory duties is separate from and independent of its tort liability.
{¶ 24} The default position in R.C. Chapter 2744 is that political subdivisions are immune from liability and that they are liable only when the circumstances fall under one of the exceptions enumerated in that chapter of the Revised Code. In previously considering R.C. 2744.02(B)(3), we have recognized that the General Assembly’s intent in amending the statute “was not whimsy but a deliberate effort to limit political subdivisions’ liability for injuries and deaths on their roadways.” Howard v. Miami Twp. Fire Div., 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 26. We must accordingly apply the exceptions to statutory immunity that the General Assembly has specified in R.C. 2744.02(B) strictly as written.
{¶25} R.C. 2744.02(B)(3), subject to a limited exception that is inapplicable here, provides that “political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads.” R.C. 2744.01(H) specifies that “ ‘[pjublic roads’ does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are *149 mandated by the Ohio manual of uniform traffic control devices.” (Emphasis added.) Thus, mandatory traffic-control devices that are negligently maintained may remove a political subdivision’s immunity and cause it to be subject to liability only when the terms of R.C. 2744.01(H) are met.
{¶ 26} In the version of the Ohio Manual of Uniform Traffic Control Devices (“the Manual”) effective at the time of the accident in this case, Section 2B.05 provided:
STOP signs should be used if engineering judgment indicates that one or more of the following conditions exist:
A. Intersection of a less important road with a main road where application of the normal right-of-way rule would not be expected to provide reasonable compliance with the law;
B. Street entering a through highway or street (O.R.C. Section 4511.65 provides information on through highways (see Appendix B2));
C. Unsignalized intersection in a signalized area; and/or
D. High speeds, restricted view, or crash records indicate a need for control by the STOP sign.
(Capitalization sic; emphasis added.) This is not mandatory language. Unlike other portions of the Manual that use the word “shall,” this section uses the permissive, nonmandatory “should” for the instruction on the installation of stop signs as presented by this case’s factual scenario. The Manual does not mandate the use of a stop sign in this situation. Thus, as an unmandated traffic-control device, a stop sign is not within R.C. 2744.01(H)’s definition of a public road. There accordingly is no exception to immunity under R.C. 2744.02(B)(3), and the city of Findlay is not liable.
{¶ 27} The lead opinion concludes that traffic-control devices required by R.C. 4511.65(A) are not excluded from the definition of a public road under R.C. 2744.01(H). Lead opinion at ¶ 11. But R.C. 2744.01(H) incorporates only the Manual into its definition of public roads. It does not incorporate R.C. 4511.65.[1] Therefore, regardless of whether the lead opinion is correct that R.C. 4511.65(A) *150 mandated that the city erect a stop sign at the intersection at issue here, the existence of that statutory duty cannot trigger tort liability. Indeed, R.C. 2744.02(B)(5) specifies that “[c]ivil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision.” For liability to exist, the exception to immunity must be enunciated in R.C. Chapter 2744. The General Assembly has not done so in this regard.
Drake, Phillips, Kuenzli & Clark, William E. Clark, and Zachary J. Barger, for appellants.
Donald Rasmussen, Findlay Law Director; and Allain Legal, Ltd., Eric M. Allain, and William F. Schmitz, for appellee.
{¶ 28} While some may argue that it is counterintuitive for one section of the Revised Code to impose a mandatory duty upon a political subdivision while another section appears to allow the political subdivision to fail in that duty with impunity, this is the choice the General Assembly has made. Because the stop sign here is excluded from R.C. 2744.01(H)’s definition of public roads, R.C. 2744.02(B)(3) does not apply.
{¶ 29} I respectfully dissent from the court’s decision and would affirm the judgment of the Third District Court of Appeals.
Kennedy and French, JJ., concur in the foregoing opinion.

. While the duties of appellee, the city of Findlay, under R.C. 4511.65 should not be relevant to the immunity analysis, the city argues that “R.C. 4511.65 does not mandate the installation or maintenance of traffic control devices” but instead “provides the manner in which a state route becomes designated as a through highway.” The city also notes that R.C. 4511.65(A) allows the director of the Ohio Department of Transportation to omit stop signs on roadways intersecting with through highways under the director’s jurisdiction when “circumstances warrant” and argues that this provision means that under R.C. 4511.65, a stop sign can never be considered to be “mandated.”